IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL L. ROSADO, | ) | CASE NO. 4:10 CV 1497 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

**Introduction**

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Angel L. Rosado, for supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Rosado had severe impairments consisting of obesity, lower extremity edema, sleep apnea, and depression.[1] The ALJ made the following finding regarding Rosado's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except for the following limitations: no climbing, balancing, stooping, crouching, crawling, or kneeling; no more than the most basic reading, writing, or math skills; limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions and, in general, relatively few work place changes; limited to occupations not involving high levels of stress, i.e. not requiring

---

[1] Transcript ("Tr.") at 20.

independent decision making; no interaction with general public, and only incidental interaction with supervisors or coworkers.[2]

Given that residual functional capacity, the ALJ found Rosado had no past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed nationally that Rosado could perform.[4] The ALJ, therefore, found Rosado not under a disability.[5]

Rosado asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Rosado argues that the ALJ failed to evaluate, weigh , and articulate as to the opinions of the medical sources treating his mental impairments and that substantial evidence does not support the ALJ's residual functional capacity and substantial numbers findings.

I conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[2] *Id.* at 21-22.

[3] *Id.* at 24.

[4] *Id*. at 25.

[5] *Id*. at 25-26.

**Analysis**

**A.     Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions.  42 U.S.C. § 405(g).  However, the scope of review is limited under 42 U.S.C. § 405(g):  "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...."  In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence.  Substantial evidence is " 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[6]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[7]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[8]

---

[6] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001) (citations omitted).

[7] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir.1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[8] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Substantial evidence supports the ALJ's finding of no disability.**

This case involves issues at three steps in the sequential evaluation process: (1) the step three finding that no listing was met, (2) the weight given to the medical sources' opinions at step four, and (3) the step five finding that a significant number of jobs existed nationally that Rosado could perform.

**1.     There is substantial evidence to support the ALJ's finding that Rosado did not meet or equal the listings**.

The ALJ found that Rosado's condition did not meet or medically equal listing § 12.04 because Rosado did not meet any of the "paragraph B" criteria. "Paragraph B" requires a mental impairment to result in at least two of the following:

- Marked restriction of activities of daily living; or
- Marked difficulties in maintaining social functioning; or
- Marked difficulties in maintaining concentration, persistence, or pace; or
- Repeated episodes of decompensation, each of extended duration.[9]

The ALJ found no restrictions on daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.[10]

---

[9] 20 C.F.R. Part 404, Subpart P, Appendix 1, listing § 12.04 B.

[10] Tr. at 21.

-4-

Rosado contends that the ALJ's findings as to the first three criteria are not supported by substantial evidence because the ALJ's findings are not supported by the reports of David Guy, Ph.D. and Donald Degli, M.A., consulting, examining psychologists.[11]

The Commissioner responds that both psychologists found evidence of malingering, and neither specifically assessed the paragraph B criteria.[12] In contrast, Irma Johnson, Psy.D., the state agency reviewing psychologist, specifically found only moderate limitations under paragraph B.[13] Rosado replies that the ALJ expressly gave weight to the opinions of Dr. Guy and Degli but did not mention the opinion of Dr. Johnson, and so any justification from Dr. Johnson's report would be to improperly provide *post hoc* rationalizations for the ALJ opinion.[14]

The parties do not contest that the ALJ satisfied his obligation to provide reasons for his decisions as to all four criteria. The issue is whether the ALJ's findings have the support of substantial evidence.[15] Rosado argues that Dr. Johnson's report cannot be considered when making this decision because "at no point in his Step 3 evaluation does the ALJ even

---

[11] ECF # 18 at 7-8.

[12] ECF # 19 at 4.

[13] *Id*.

[14] ECF # 18 at 112.

[15] Tr. at 21; *see also*, 42 U.S.C. § 405(b)(1) ("Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.").

-5-

mention" Dr. Johnson's report.[16] But equally true, at no point in his step 3 evaluation does the ALJ mention the report of Degli.[17] According to Rosado's argument, then, consideration of either of these reports would constitute *post hoc* rationalizations. But, "[b]oth the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by [the Commissioner]."[18]

And in reviewing the entire record, including the opinions of Dr. Johnson and Degli as well as those reports cited by the ALJ – from Dr. Ariza, Dr. Guy, and Dr. Irilli (psychologist) – there is substantial evidence that Rosado does not suffer from a marked restriction of activities of daily living; marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace.[19] The step three finding, therefore, has the support of substantial evidence.

**2.     Substantial evidence supports the weight given to the opinions of Dr. Guy and Degli.**

As noted, the ALJ found that Rosado could perform sedentary work where there was "no interaction with general public, and only incidental interaction with supervisors or

---

[16] ECF # 18 at 8.

[17] Tr. at 20-21. Rosado relies on statements by the ALJ that he relied on Dr. Guy and Degli for *step four*. This question concerns *step three*. *See*, ECF # 18 at 7-8.

[18] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

[19] Tr. at 21 (citing *id*. at 102, 207, and 268).

coworkers."[20] Rosado contends that this finding did not give proper weight to two examining psychologists, Dr. Guy and Degli.

Degli evaluated Rosado on behalf of the state Bureau of Disability Determination. Degli found that Rosado is "hardly capable of interacting appropriately with peers, supervisors or the adult public in a competitive work setting. He might function in an independent isolated type of work setting."[21] Degli concluded that Rosado was "moderately impaired in his ability to meet the demands of competitive adult employment."[22] He also reports evidence of malingering throughout the interview.[23]

Dr. Johnson, also on behalf of the state, later summarized Degli's findings as follows: [Degli] finds that [Rosado] would have limitations in his ability to understand instructions, socialize, and adapt to stress."[24] Dr. Johnson stated her assessment that Rosado "retains the capacity to work with others only on an infrequent basis."[25]

The ALJ correctly notes that his opinion is consistent with the report of Dr. Guy, who found that Rosado "tends to be socially isolated" and "seeks to avoid others."[26] As both

---

[20] *Id.* at 22.

[21] *Id.* at 172.

[22] *Id*.

[23] *Id*. at 170-72.

[24] *Id.* at 182.

[25] *Id*.

[26] *Id.* at 268-69.

-7-

parties acknowledge, Dr. Guy was not Rosado's treating physician, and so the treating physician rule does not apply to his testimony.[27]  There is no requirement, therefore, that the ALJ give controlling weight to Dr. Guy's assessment.  Nevertheless, Dr. Guy's evaluation is consistent with the ALJ's finding.

Substantial evidence supports the ALJ's step four determination of residual functional capacity.

**3.     There is substantial evidence to support the ALJ's step five finding that Rosado could perform a significant number of jobs in the national economy.**

Rosado argues that the jobs identified by the vocational expert are not listed in the Dictionary of Occupational Titles (DOT) and are inconsistent with the DOT listings.  The vocational expert identified three jobs that Rosado could perform:  packer (50,000 jobs nationally), alarm monitor (75,000 jobs nationally), and ticket sorter (77,000 jobs nationally).[28]  These jobs are not listed in the DOT according to Rosado.

The ALJ is required to "elicit a reasonable explanation" for an "apparent unresolved conflict" between the testimony of the vocational expert and the DOT listings and to explain

---

[27] *See*, ECF # 18, at 5 ("[Dr. Guy] was not Rosad's [sic] treating psychologist but he was associated with the same facility...").  "A physician is a treating source if he has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant ... "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s) ]."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009).  Dr. Guy did not have an ongoing treatment relationship of any kind with Rosado given that Dr. Guy only evaluated Rosado once.

[28] Tr. at 25.

-8-

the resolution of the conflict in his opinion.[29] But, the ALJ does not have an affirmative duty to investigate whether the vocational expert's testimony conflicts with the DOT; the ALJ is only required to affirmatively ask the vocational expert if the vocational expert's testimony is consistent with the DOT.[30] If the vocational expert testifies that they are consistent, then the ALJ "has no duty to interrogate him further."[31]

Here, the three jobs identified by the vocational expert were not found in the DOT. This alone is not evidence of an inconsistency.[32] Prompted by the ALJ's question, the vocational expert confirmed that her testimony was consistent with the DOT.[33] Thus, the ALJ satisfied the requirements of Social Security Ruling 00-4p and did not need to investigate further. Rosado's counsel had the opportunity to cross-examine the vocational expert to expose any inconsistencies and failed to ask any questions of the vocational expert.[34]

---

[29] Social Security Ruling 00-4p: Use of Vocational Expert and Vocational Specialist Evidence and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, at *3 (Dec. 4, 2000).

[30] *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)).

[31] *Id.*

[32] "The fact, therefore, that a vocational expert and the DOT might use different terminology to describe employment positions does not establish that a conflict exists between these sources of evidence." *Id.* at 605.

[33] Tr. at 419.

[34] *Id.*

Rosado has two other objections to the vocational expert's testimony.  First, Rosado notes his residual functional capacity precludes stooping, which would usually result in a finding of disability.[35]  This is true according to Social Security Ruling 96-9p.[36]  But, the same regulation suggests that decisionmakers consult a vocational resource in making a disability determination "where the individual is limited to less than occasional stooping."[37]  The ALJ did so here, and, once again, properly relied on the testimony of the vocational expert, who opined that jobs existed.

Second, Rosado argues that the vocational expert's testimony that an individual who was off task 10% of the time would be unable to function in the work place.[38]  Substantial evidence supports the ALJ's decision not to incorporate that limitation into the residual functional capacity finding, as articulated in the ALJ's decision.[39]

As an additional issue, raised by the Court *sua sponte* at the hearing, the vocational expert only provided national numbers to show that a significant number of jobs exists in the national economy.  The applicable statute and regulations define "jobs which exist in the

---

[35] "A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work."  SSR 96-9p, 1996 WL 374185, at *8 (1996).

[36] Social Security Ruling 96-9p:  Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than Full Range of Sedentary Work, 61 Fed. Reg. 34478, 34482, 1996 WL 362208 (July 2, 1996).

[37] *Id.*

[38] Tr. at 419.

[39] *Id.* at 23-24.

national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country."[40] A commonsense reading of this provisions requires *either* work numbers from Rosado's region *or* numbers from several other regions. Given that the burden of proof lies with the Commissioner to prove that such jobs exist,[41] the Commissioner ought to provide regional numbers to show that existing jobs are not concentrated in only a few areas.

In this case, however, I will reluctantly follow the lead of the Sixth Circuit and rely on the national numbers absent an "indication of gross concentration in a few areas."[42] There is no such indication here, so the national numbers will have to suffice.

---

[40] 42 U.S.C. § 423 (2006). Federal regulations clarify the purpose of this requirement: "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'" 20 C.F.R. § 414.966.

[41] *Harmon v. Comm'r of Soc. Sec.*, 168 F.3d 289, 291 (6th Cir. 1999) ("Plaintiff has the burden to establish an entitlement to benefits by proving the existence of a disability as defined in the Act. A claimant establishes a prima facie case by showing that she is unable to perform her former work. The burden then shifts to the Secretary to show that claimant, considering her age, education, and work experience, can perform other work existing in significant numbers in the national economy." (citations omitted)).

[42] *See*, *Harmon*, at 292 (holding that "700,000 jobs [in the national economy], with no indication of gross concentration in a few areas, is a 'significant number of jobs in the national economy'"); *see also*, *Geiger v. Apfel*, 229 F.3d 1151 (table), 2000 WL 1257184, at *2 (6th Cir. 2000) ("The Commissioner need not show that a significant number of jobs exists in the local economy, only that the claimant is capable of performing other jobs existing in the national economy."); *Nation v. Apfel*, 194 F.3d 1313 (table), 1999 WL 970302, at *8 (6th Cir. 1999) ("Based upon *Harmon*, it is clear that Plaintiff's claim that the vocational expert improperly failed to specify the geographical area of the state or direct Plaintiff to any specific job is without merit. It is sufficient that the vocational expert identified a significant number of jobs which exist in the national economy that Plaintiff could perform.").

## Conclusion

Substantial evidence supports the finding of the Commissioner that Rosado had no disability.  Accordingly, the decision of the Commissioner denying Rosado supplemental security income is affirmed.

IT IS SO ORDERED.


Dated:  November 8, 2011                       s/ William H. Baughman, Jr.
                                               United States Magistrate Judge